**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan E. Allen, | No. CV-22-2154-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Susan E. Allen ("Plaintiff") challenges the denial of her application for disability insurance benefits by Defendant Social Security Administration under the Title II of the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with the Court seeking review of her claim. The Court has reviewed the briefs (Docs. 23, 27, 28) and the Administrative Record (Doc. 18, "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.    BACKGROUND**

Plaintiff filed an application for disability insurance benefits under Title II on March 28, 2015, for a period of disability beginning on October 5, 2014. (A.R. at 160-61.) Plaintiff's claim was initially denied on September 1, 2015 (*id.* at 171-72), and upon reconsideration on January 15, 2016 (*id.* at 190). Thereafter, Plaintiff filed a request for a hearing, which was held before the ALJ on December 21, 2017. (*Id.* at 74-98.) During this hearing, Plaintiff amended her period of disability to beginning March 28, 2015. (*Id.* at 82.) A supplemental hearing followed on July 23, 2018. (*Id.* at 129-158.) On September 24,

2018, the ALJ dismissed the Plaintiff's disability insurance benefits application. (*Id.* at 194-206.) On January 28, 2020, the Appeals Council remanded with directions to further evaluate Plaintiff's mental impairment, further consider Plaintiff's maximum residual functional capacity, further consider whether Plaintiff has past relevant work and, if so, can perform it, and obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. (*Id.* at 215-16.) Plaintiff appeared before the ALJ on September 29, 2021, for rehearing. (*Id.* at 99-128.) The ALJ denied Plaintiff's disability insurance benefits on November 1, 2021. (*Id.* at 23-39.) Plaintiff subsequently filed a request for review, which was denied on August 31, 2022. (*Id.* at 2-5.) Plaintiff now seeks judicial review with this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: degenerative disc disease of the cervical spine, fibromyalgia, obesity, craniopharyngioma, sleep apnea, hypertension, chronic kidney disease, depressive disorder, and opioid dependence. (*Id.* at 26.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 27.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except the claimant should never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs, stoop, crouch, crawl, kneel, and balance (as defined in the DOT and SCO). The claimant can occasionally reach overhead bilaterally. She can have occasional exposure to pulmonary irritant, such as fumes/odors/dusts/gases. She can work with occasional exposure to non-weather related extreme cold, non[-]weather related wetness, non[-]weather related

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

> humidity, and poorly ventilated areas. She can have occasional exposure to dangerous moving machinery and unprotected heights. She is able to perform work involving understanding, remembering, and carrying out simple instructions, consistent with an SVP of 2 or below. She is able to perform work requiring occasional routine changes in the work setting.

(*Id.* at 29.) Based on this RFC, the ALJ found Plaintiff could not perform past relevant work but could perform other jobs existing in significant numbers in the economy, such as marker, office helper, photocopy machine operator, and routing clerk. (*Id.* at 37-38.) Ultimately, the ALJ concluded that Plaintiff was not disabled under §§ 261(i) and 223(d) of the Social Security Act. (*Id.* at 39.)

**II.    LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but

the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520 (a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (f). If not, the claimant is disabled. *Id.*

### III. DISCUSSION

Plaintiff raises three issues before the Court. Plaintiff argues that the ALJ improperly evaluated her symptom testimony. Plaintiff also argues that the ALJ improperly discredited the opinions of treating pain management specialist, Dr. Lisa Sparks. (*Id.* at 13.) Lastly, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 11.)

#### A. Symptom Evaluation

An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)

(quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence and if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. An ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff contends that the ALJ's assessment of her symptom testimony was based upon distortions of: (1) the effectiveness of medical treatment, (2) ability to perform activities of daily living, and (3) the circumstances surrounding the end of Plaintiff's employment. (Doc. 23 at 18-24.)

### 1. Effectiveness of Medical Treatment

Plaintiff claims the ALJ "cherry pick[ed]" from the medical evidence to paint an unfair portrait of her symptoms. (*Id.* at 20.) Plaintiff also argues that the ALJ neglected to consider instances of elevated pain levels when concluding that medication alleviated pain symptoms. (*Id.*)

Here, the ALJ found "inconsistency between the [Plaintiff's] allegations and the objective medical evidence" where the record demonstrates that Plaintiff's treatment has been effective in mitigating her impairments. (A.R. at 31.) The ALJ noted that Plaintiff underwent successful surgery for craniopharyngioma and had been taking medications that had been "relatively effective in controlling the [Plaintiff's] symptoms." (*Id.*). In support of this assertion, the ALJ cited several medical reports spanning from March 16, 2014, through July 14, 2016. (*Id.* (citing A.R. at 647, 681, 726, 758, 768, 1042, 1071, 1189).)

The ALJ found that Plaintiff's allegations were "not *entirely* consistent with the

evidence." (*Id.*) (emphasis added). The ALJ then explained where she found inconsistencies. The ALJ referenced several medical reports documenting the effectiveness of medication. The ALJ did not rely on a "single notation" showing a "good-day," (Doc. 23 at 20 (citing *Garrison*, 759 F.3d. at 1017)), but rather relied on a broad swath of Plaintiff's medical history showing that medications brought Plaintiff significant relief. In highlighting the inconsistencies between the Plaintiff's reported symptoms and the medical evidence, the ALJ was not required to discuss every other potentially relevant piece of evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" (citation omitted)).

The ALJ's ultimate determination recognizes that medications "have been *relatively* effective in *controlling* the [Plaintiff's] symptoms." (A.R. at 31) (emphasis added). That is not to say that Plaintiff is not in pain or that the record is otherwise free of evidence showing as much. Rather, "[i]mpairments that can be *controlled effectively* with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (emphasis added). The ALJ made an appropriate inquiry into a relevant matter and demonstrated substantial support for her conclusion. The Court will not second guess the ALJ's determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." (citation omitted)).

### 2. Activities of Daily Living

Plaintiff contends that the ALJ misrepresented her activities of daily living to "make her seem more functional." (Doc. 23 at 21.) Plaintiff again claims the ALJ cherry-picked from the record. (*Id.*)

Here, the ALJ considered reports of Plaintiff's daily activities, such as going to the grocery store, cooking, performing self-care activities, doing laundry, washing dishes, driving her daughter to and from school, going to church, and using her phone for various purposes. (A.R. at 31). *See* 20 C.F.R. §404.1529(c)(3)(i) (listing daily activities as a factor

relevant for consideration when assessing symptoms). The ALJ then properly concluded that the severity of Plaintiff's allegations was not fully supported by her daily activities. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding ALJ properly supported rejecting claimant's complaints when relying on the record showing "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping manage finances").

While Plaintiff takes issue with the ALJ citing to evidence showing ability to perform activities of daily living and not to other evidence suggesting a lesser degree of functioning (Doc. 23 at 21), the ALJ highlights inconsistencies with Plaintiff's specific claims. Activities of daily living "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, the ALJ contrasts Plaintiff's allegation that "depression affects her ability to interact with others" with evidence indicating that the Plaintiff is able to go to the grocery store, church, and family gatherings. (A.R. at 28.) Similarly, where Plaintiff asserts that "she is unable to work due to chronic, daily pain" and has significant physical limitations, it is appropriate to consider evidence of driving, cooking, and self-care to the extent that these activities conflict with Plaintiff's assertions. *(Id.* at 30, 31.) Plaintiff insists that the ability to perform modest activities of daily living should not be conflated with ability to perform in a competitive work environment. (Doc. 23 at 22.) That may be the case, but it does not follow that an ALJ may not weigh discrepancies against a claimant's self-reported symptoms for the purposes of evaluating credibility, as was the case here.

### 3. End of Employment

Plaintiff raises a factual dispute as to what precipitated her departure from work. (Doc. 23 at 23.) The ALJ found that Plaintiff "stopped working because she was laid off on or about the alleged onset date, rather than due to her pain complaints and maladies." (A.R. at 31.) Inter alia, Plaintiff cites to testimony from the September 29, 2021 hearing during which Plaintiff explained that her symptoms made it difficult to work. (Doc. 23 at

23 (citing A.R. at 105-06).) During this portion of the testimony, the ALJ restated Plaintiff's testimony before moving on to the next line of questioning: "[a]nd so, you indicated *part of the reason you stopped working* was -- was due to pain." (A.R. at 107) (emphasis added). In response to Plaintiff, Defendant cites to testimony from the December 21, 2017 hearing. (Doc. 27 at 12 (citing A.R. at 84).) There, the following exchange occurred:

> Q: And why'd you stop [working]?
> A: I was not doing a very good job. I was in a lot of pain.
> Q: So -- so, did you quit, or they terminate you or what happened?
> A: They laid -- they laid me off and --
> Q: Okay.
> A: -- brought -- they also wanted to bring in someone for a lower pay. So, they didn't actually terminate me. They laid me off.

(A.R. at 84.)

Thus, Plaintiff did testify that her employer laid her off and explained that the decision was motivated at least in part by economic considerations. (*Id.*) To the extent that the ALJ omitting the possibility that Plaintiff's pain contributed to her losing her job constitutes error, it is harmless in light of the other articulated reasons for discrediting Plaintiff's symptom testimony. "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

Here, the ALJ identified reasons to discount Plaintiff's subjective complaints, including the lack of supporting objective medical evidence, evidence of effective treatment, and ability to perform activities of daily living. The Court therefore finds that the ALJ conclusion is supported by substantial evidence. *See Tommasetti*, 533 F.3d 1035, 1039.

### B.     Treating Physician's Opinion

While "[t]he ALJ must consider all medical opinion evidence," for claims filed before March 27, 2017, such as this one, the ALJ must consider those opinions within the hierarchy among the sources of medical opinions. *Tommasetti*, 533 F.3d at 1041; *see also Garrison*, 759 F.3d at 1012. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* Treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see also Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (cleaned up).

Plaintiff has been seen by Lisa Sparks, M.D., for pain management treatment since at least 2006. (A.R. at 1451.) On June 15, 2015, Dr. Sparks provided an assessment of Plaintiff's physical limitations. (*Id.* at 675-80.) Dr. Sparks opined that Plaintiff could sit for two hours, stand for one hour, and walk for thirty to forty-five minutes at one time without interruption. (*Id.* at 676.) Further, Dr. Sparks opined that Plaintiff could sit for one hour, stand for fifteen minutes, and walk for one hour over the course of an eight-hour workday. (*Id.*) On June 22, 2018, Dr. Sparks again addressed Plaintiff's physical

limitations. (*Id.* at 1452-53.) At that time, Dr. Sparks found that Plaintiff could sit for up to forty-five minutes and stand for thirty minutes at a time. (*Id.* at 1452.) Additionally, Dr. Sparks indicated that Plaintiff was not capable of sitting, standing, or walking for more than two hours over the course of an eight-hour workday. (*Id.*) Dr. Sparks further opined that Plaintiff was "unable to work due to pain." (*Id.* at 1453.)

The ALJ gave "no weight" to Dr. Sparks' opinion for many reasons. (*Id.* at 36.) The ALJ found Dr. Sparks' opinion "too limiting" and "inconsistent with the evidence showing that the claimant's pain medication helped relieve pain." (*Id.*) Moreover, the ALJ found Dr. Sparks' opinion inconsistent with other evidence documenting the Plaintiff's "normal gait, sensation, and reflexes." (*Id.*) The ALJ further noted that Dr. Sparks' opinion was based on the Plaintiff's "subjective reports of pain." (*Id.*) Finally, the ALJ found that Dr. Sparks' conclusion that Plaintiff could not work "is on an issue reserved for the Commissioner." (*Id.*)

Plaintiff argues the ALJ erroneously discredited Dr. Sparks' opinion because the ALJ did not "address the majority of regulatory factors, focusing instead primarily on her own interpretation of the evidence and substituting it for the opinion of a treating medical expert." (Doc. 23 at 14.) A treating physician's opinion is given controlling weight when such opinion "is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is inconsistent with other substantial evidence an ALJ must nevertheless abide by 20 C.F.R. § 404.1527(c)(2) and "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Yet, "[a]n ALJ need not expressly state she considered all factors when her decision clearly indicates that she did." *Chisholm v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08010-PCT-JAT, 2019 WL 5587004, at *3 (D. Ariz. Oct. 30, 2019) (citing *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018)).

Here, the ALJ found conflicting evidence such that Dr. Sparks' opinion was not

entitled to controlling weight. In so doing, the ALJ cited specific medical reports which show that Plaintiff's pain was controlled to some degree by medication and further that Plaintiff had greater mobility than what was reflected in Dr. Sparks' assessments. (A.R. at 35-36.) For example, the ALJ cited a June 3, 2015 report, which documented that the Plaintiff's pain fluctuates from a "2/10" minimum to a "9/10" maximum and that Plaintiff's "pain is relieved by lying down, medication, and relaxation." (*Id.* at 36 (citing A.R. at 681).) Another report the ALJ cited from August 2, 2016, was authored by Dr. Sparks herself and documented the following: "normal gait, moves easily about the office today, no assistive devices used today." (*Id.* (citing A.R. at 731).) Thus, the ALJ's finding of inconsistency, even within Dr. Sparks' own treatment records, was supported by substantial evidence.

Having found inconsistencies with Dr. Sparks' opinion such that it would not be controlling, the ALJ was free to assign the opinion weight under 20 C.F.R. § 404.1527. That the ALJ did not perform a complete recitation of all the regulatory factors, one after the next, was not an error. The ALJ explicitly stated that she "considered opinion evidence in accordance with 20 CFR 404.1527." (A.R. at 30.) *See Chisholm*, 2019 WL 5587004, at *3. Furthermore, the ALJ provided a detailed overview of the Plaintiff's medical history, which incorporated references to treatment Plaintiff received from Dr. Sparks and appropriately cited to corresponding reports. (*Id.* at 31-36.) Additionally, the ALJ identified Dr. Sparks as the "claimant's physician" when deciding to assign Dr. Sparks' opinion no weight. (*Id.* at 35-36.) In totality, the ALJ's decision reveals a holistic consideration required by 20 C.F.R. § 404.1527.

### C. Residual Functional Capacity Determination

Plaintiff argues that the ALJ's RFC determination was "conclusory and arbitrary," as it relates to Plaintiff's fibromyalgia and associated pain and fatigue. (Doc. 23 at 11-13.) Plaintiff alleges that the ALJ improperly concluded that examining physician Dr. Gordon's finding of fibromyalgia tender points "are supportive of the decision residual functional capacity rather than the claimant's reports of debilitating nerve pain." (*Id.* at 12 (citing A.R.

at 33).) Additionally, Plaintiff asserts that the ALJ made only brief reference to fatigue symptoms when rejecting the opinions of agency psychological examiners. (*Id.* (citing A.R. at 35).) Plaintiff then asserts that the "medical record is replete with reports of fatigue" and cites several examples. (*Id.*)

Plaintiff mischaracterizes the ALJ's statements. First, the ALJ found Dr. Gordon's examination revealed fibromyalgia tender points but also equal strength in upper and lower extremities with full range of motion, normal reflexes and sensation, and normal grip strength. (A.R. at 33.) Taken as a whole, these findings are fairly characterized as inconsistent with the Plaintiff's allegation of debilitating nerve pain, notwithstanding the documentation of fibromyalgia tender points. Second, the ALJ did refer to Plaintiff's fatigue when assigning no weight to the psychological examiners. The ALJ assigned no weight because "the opinions are not consistent with the evidence showing that the claimant experienced *increased depression, fatigue, and memory trouble*." (*Id.* at 35) (emphasis added). Similarly, the ALJ ultimately rejected a 2018 report from Dr. Gordon, finding it "not limiting enough given the claimant's reduced range of motion and fibromyalgia symptoms." (*Id.*) Far from showing a conclusory and arbitrary assessment of the Plaintiff's fatigue symptoms, the decision demonstrates the ALJ considered and took seriously evidence that fatigue impacted the Plaintiff's functioning, even going so far as to reject these contrary opinions. Thus, the RFC is supported by substantial evidence.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the November 1, 2021 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration (A.R. at 23-39).

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 6th day of March, 2024.

James A. Teilborg
Senior United States District Judge